## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **STEPHANIE A. SWINEY,** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:14cv00011** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | **MEMORANDUM OPINION** |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | **BY: PAMELA MEADE SARGENT** |
| **Defendant** | ) | **United States Magistrate Judge** |

*I. Background and Standard of Review*

Plaintiff, Stephanie A. Swiney, ("Swiney"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2011). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by transfer based on consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Oral argument has not been requested; therefore, the matter is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

-1-

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is Asubstantial evidence.'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Swiney protectively filed an application for DIB on September 20, 2010, alleging disability as of September 2, 2010, due to lower lumbar spine fusion with rods and screws, degenerative disc disease, anxiety, panic disorder, agoraphobia, depression, insomnia and panic attacks. (Record, ("R."), at 187, 190-91, 201, 205.) The claim was denied initially and on reconsideration. (R. at 107-09, 113-15, 118, 119-21, 123-25.) Swiney then requested a hearing before an administrative law judge, ("ALJ"), (R. at 126-27), and a hearing was held on October 31, 2012, at which Swiney was represented by counsel. (R. at 36-66.)

By decision dated December 21, 2012, the ALJ denied Swiney's claim. (R. at 13-28.) The ALJ found that Swiney met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2014. (R. at 15.) The ALJ also found that Swiney had not engaged in substantial gainful activity since September 2, 2010, her alleged onset date. (R. at 15.) The ALJ found that the medical evidence established that Swiney suffered from severe impairments, namely status-post L5 laminectomy and L5/S1 interbody fusion surgery, anxiety disorder, panic disorder and depression, but he found that Swiney did not have an

-2-

impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15-17.) The ALJ found that Swiney had the residual functional capacity to perform sedentary work,[1] which did not require more than occasional kneeling, crouching and stooping and that allowed an option to alternate between periods of sitting and standing throughout the day. (R. at 17.) The ALJ further found that Swiney was limited to performing short, simple instructions. (R. at 17.) The ALJ found that Swiney was unable to perform any of her past relevant work. (R. at 27.) Based on Swiney's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Swiney could perform, including jobs as an assembler, a packer/stuffer and an inspector/tester. (R. at 27-28.) Thus, the ALJ found that Swiney was not under a disability as defined by the Act and was not eligible for DIB benefits. (R. at 28.) *See* 20 C.F.R. § 404.1520(g) (2014).

After the ALJ issued his decision, Swiney pursued her administrative appeals, (R. at 8), but the Appeals Council denied her request for review. (R. at 1-6.) Swiney then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2014). The case is before this court on Swiney's motion for summary judgment filed October 6, 2014, and the Commissioner's motion for summary judgment filed

---

[1] Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying items like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing often is necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2014).

Case 2:14-cv-00011-PMS   Document 15   Filed 07/13/15   Page 3 of 25   Pageid#: 1312

December 10, 2014.

## II. Facts

Swiney was born in 1975, (R. at 38), which classifies her as a "younger person" under 20 C.F.R. § 404.1563(c). She has a high school education and past relevant work experience as a bailiff and a bank teller. (R. at 38, 206.) Swiney stated that Prozac and Xanax were somewhat helpful, but she continued to have panic attacks. (R. at 51.)

John Newman, a vocational expert, also was present and testified at Swiney's hearing. (R. at 61-65.) Newman classified Swiney's past work as a bailiff as light[2] and semi-skilled and her job as a bank teller as light and skilled. (R. at 62.) Newman was asked to consider a hypothetical individual of Swiney's age, education and work history, who had the residual functional capacity to perform sedentary work that did not require more than occasional kneeling, crouching, climbing and stooping, that allowed a sit/stand option, which allowed her to be able to move in place while in a seated position or briefly rise from a seated position to a standing position throughout the day and that did not require her to perform tasks involving more than short and simple instructions. (R. at 62-63.) Newman stated that a significant number of jobs existed that such an individual could perform, including jobs as an assembler, a packer and an

_____

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2014).

-4-

inspector/tester/sorter. (R. at 63.) Newman stated that if the individual was seriously limited in her ability to maintain attention and concentration, to deal with work stress, to complete simple job instructions, to relate in social situations and to demonstrate reliability, that these limitations would be below what is required for unskilled work. (R. at 64-65.)

In rendering his decision, the ALJ reviewed medical records from Dickenson County Public Schools; Dr. Craig S. Graul, D.O.; Jo McClain, P.C., a state agency psychologist; Dr. Alison Whitman, M.D.; Lonesome Pine Hospital; Johnston Memorial Hospital; Patrick N. Farley, Ed.D., a licensed professional counselor; John Powell, P.A.-C., a certified physician's assistant; Dr. Michael Hartman, M.D., a state agency physician; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Dr. Thomas Henretta, M.C., a state agency physician; Joseph Leizer, Ph.D., a state agency psychologist; Dr. Jim C. Brasfield, M.D.; Dr. Thomas G. Sutton, M.D., of the University of Virginia Pain Management Center; and Dr. Sachdev Somiah, M.D., a psychiatrist. Swiney's attorney submitted additional medical records from Farley, Dr. Somiah, Dr. V. Kumar, M.D., and Dr. Whitman to the Appeals Council.[3]

In October 2007, Swiney underwent an L5 posterior interbody infusion for lumbar degenerative disc disease. (R. at 333, 356.) Follow-up treatment notes

_____

[3] Since the Appeals Council considered and incorporated this additional evidence into the record in reaching its decision, (R. at 1-6), this court must also take these new findings into account when determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991).

-5-

reflected that her condition was improving. (R. at 331.)

The record shows that Swiney was treated by Dr. Craig S. Graul, D.O., from 2007 through 2010 for complaints of depression, anxiety and low back pain. (R. at 491-595.) In January 2009, Swiney reported that she was feeling fine. (R. at 545.) In June 2009, and again in June 2010, Swiney reported that her anxiety was improving with medication. (R. at 551, 588, 590.)

On March 12, 2010, Swiney saw Dr. Alison Whitman, M.D., for complaints of depression and anxiety. (R. at 565.) Swiney reported that she was recently injured and working a desk job, and she feared that her boss would not be rehired, resulting in the loss of her job. (R. at 565.) In April 2010, Swiney told Dr. Whitman that she still had not heard if she was able to keep her job or not and that she could not tell that she even cared about the job anymore. (R. at 569.) On May 15, 2010, Swiney presented to the emergency room at Lonesome Pine Hospital, ("Lonesome Pine"), for complaints of anxiety attacks. (R. at 390-99.) Swiney's affect was anxious. (R. at 391.) She was diagnosed with acute anxiety and panic attack. (R. at 391.) On May 21, 2010, Swiney presented to the emergency room at Johnston Memorial Hospital for complaints of anxiety and noncardiac chest pain. (R. at 416-36.) Swiney reported that Xanax eliminated her symptoms. (R. at 417.) Her behavior, mood and affect were within normal limits. (R. at 418.) A chest x-ray was normal. (R. at 421.) Swiney's symptoms had "markedly improved" after treatment. (R. at 419.)

-6-

In July 2010, Swiney stated that she was very anxious and nervous. (R. at 608.) Dr. Whitman recommended counseling, noting that Swiney had a very difficult marriage and that she fought with her mother-in-law. (R. at 608.) In August 2010, Swiney continued to experience anxiety attacks. (R. at 612, 615.) In September 2010, Swiney had a normal affect and demeanor. (R. at 633.) On October 5, 2010, Swiney presented to the emergency room at Lonesome Pine with complaints of a racing heart. (R. at 455-66.) A chest x-ray was normal. (R. at 465.) Swiney was diagnosed with an anxiety attack. (R. at 456.) On October 7, 2010, Swiney called Dr. Whitman's office complaining that she was still having panic attacks. (R. at 629.) She was told that a law firm had sent Dr. Whitman's office a disability form and that it would be completed at her next appointment, at which point Swiney became very calm. (R. at 629.)

On October 15, 2010, Swiney saw Dr. Whitman to have disability forms completed. (R. at 640.) On examination, Swiney's back had full range of motion with no tenderness to palpation of the spine. (R. at 642.) Straight leg-raising tests were negative bilaterally. (R. at 642.) Dr. Whitman, completed a mental assessment indicating that Swiney had an unlimited ability to maintain personal appearance and a satisfactory ability to follow work rules, to function independently and to understand, remember and carry out simple job instructions. (R. at 645-47.) She opined that Swiney had a seriously limited ability to interact with supervisors and to understand, remember and carry out detailed instructions. (R. at 645-46.) Dr. Whitman found that Swiney had no useful ability to relate to co-workers, to deal with the public, to use judgment, to deal with work stresses, to

-7-

maintain attention/concentration, to understand, remember and carry out complex instructions, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 645-46.) She opined that Swiney would miss more than two workdays a month. (R. at 647.)

That same day, Dr. Whitman completed a medical assessment indicating that Swiney could occasionally lift and carry items weighing up to 10 pounds and frequently lift and carry items weighing up to five pounds. (R. at 648-50.) She opined that Swiney could stand and/or walk a total of two hours in an eight-hour workday and that she could do so for up to five minutes without interruption. (R. at 648.) Dr. Whitman found that Swiney could sit for one hour in an eight-hour workday and that she could do so for up to one hour without interruption. (R. at 649.) She opined that Swiney could never climb, stoop, kneel, balance, crouch or crawl and that she was limited in her ability to reach, to handle and to push/pull. (R. at 649.) Dr. Whitman found that Swiney was restricted from working around heights, moving machinery, noise and vibration. (R. at 650.) She also opined that Swiney would miss more than two days of work a month. (R. at 650.)

Treatment notes from Dr. Whitman for the period November 2010 through December 2011 consistently reflect that Swiney was ambulatory with a steady gait, that her back had full range of motion with no tenderness on palpation of the spine and that straight leg raising tests were negative bilaterally. (R. at 947, 959, 965, 1030, 1045, 1051, 1074, 1077.) Swiney's psychiatric assessments repeatedly showed throughout this period that Swiney had a normal affect and demeanor and

-8-

that she was alert and oriented. (R. at 947, 1045, 1051, 1074, 1077.) On November 15, 2010, Swiney reported doing much better. (R. at 1028.) Dr. Whitman noted that disability forms were completed with Swiney's assistance. (R. at 1028.) On January 3, 2011, it was noted that Swiney's anxiety was stable. (R. at 964.) On February 21, 2011, Swiney reported that her panic attacks had improved. (R. at 1006.) On April 1, 2011, Swiney reported to Dr. Whitman that her anxiety was doing well. (R. at 991.) On May 5, 2011, Swiney reported that medication was helping her symptoms of fibromyalgia and anxiety. (R. at 945.) On November 8, 2011, Swiney's anxiety was noted as stable. (R. at 1072.) She reported that her pain medication gave her enough relief to tolerate her activities of daily living. (R. at 1072.)

On January 6, 2012, Dr. Whitman completed a mental assessment indicating that Swiney had a limited, but satisfactory, ability to follow work rules and to maintain personal appearance. (R. at 1086-88.) She opined that Swiney had a seriously limited ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to function independently, to understand, remember and carry out simple job instructions, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 1086-87.) Dr. Whitman opined that Swiney had no useful ability to deal with work stresses, to maintain attention/concentration and to understand, remember and carry out complex and detailed instructions. (R. at 1086-87.) She opined that Swiney would be absent from work more than two days a month. (R. at 1088.)

-9-

On January 9, 2012, Dr. Whitman completed a medical assessment indicating that Swiney could occasionally and frequently lift and carry items weighing up to five pounds. (R. at 1090-92.) She opined that Swiney could stand and/or walk a total of less than two hours in an eight-hour workday and that she could do so for less than 20 minutes without interruption. (R. at 1090.) Dr. Whitman found that Swiney could sit for less than two hours in an eight-hour workday and that she could do so for less than 15 minutes without interruption. (R. at 1091.) She opined that Swiney could never climb, stoop, kneel, crouch or crawl and occasionally balance. (R. at 1091.) Swiney was limited in her ability to reach, to feel and to push/pull. (R. at 1091.) Dr. Whitman found that Swiney was restricted from working around heights, moving machinery and vibration. (R. at 1092.) She also opined that Swiney would be absent from work more than two days a month. (R. at 1092.)

Treatment notes from Dr. Whitman for the period May 2012 through January 2013 consistently show that Swiney had full range of motion in her lower extremities without pain, normal gait and normal neurologic examinations, with normal strength in the lower extremities. (R. at 1154, 1158, 1162, 1166, 1170, 1194.) Psychiatric assessments also show that anxiety, depression and mood changes were not present. (R. at 1153, 1157, 1161, 1165, 1168, 1193, 1203.) During this time period, Swiney reported symptom control with medication, and it was noted that Swiney showed no signs of anxiety or depression. (R. at 1152, 1157, 1161, 1192.)

-10-

On August 26, 2010, Patrick N. Farley, Ed.D., a licensed professional counselor, evaluated Swiney upon referral from Dr. Whitman. (R. at 659-60.) Swiney complained of anxiety, depression and panic episodes. (R. at 659.) She reported that her main stressors were her struggle to work, to deal with stressors and to cope with life in general. (R. at 659.) Farley found no indication of psychosis. (R. at 660.) Swiney denied hallucinations or delusions. (R. at 660.) Her thought content was rational and coherent. (R. at 660.) Swiney's short-term memory and concentration appeared slightly impaired. (R. at 660.) She appeared depressed and very anxious. (R. at 660.) Farley diagnosed panic disorder with agoraphobia and major depression, recurrent, mild-moderate. (R. at 660.) Farley assessed Swiney's then-current Global Assessment of Functioning, ("GAF"), score[4] at 55.[5] (R. at 660.)

On September 3, 2010, Swiney reported panic attacks. (R. at 658.) Farley reported that Swiney's condition was deteriorating. (R. at 658.) He diagnosed panic disorder with agoraphobia and mild, recurrent major depressive disorder. (R. at 658.) On September 15, 2010, Swiney reported panic attacks. (R. at 657.) Dr. Farley reported that Swiney's condition was deteriorating. (R. at 657.) He again diagnosed panic disorder with agoraphobia and mild, recurrent major depressive

---

[4] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[5] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms... OR moderate difficulties in social, occupational, or school functioning...." DSM-IV at 32.

-11-

disorder. (R. at 657.) On September 24, 2010, Swiney reported that her panic attacks were increasing and that she sometimes experienced more than one a day. (R. at 656.) Her diagnoses remained unchanged. (R. at 656.) On October 15, 2010, Swiney reported that she continued to experience up to four panic attacks a week. (R. at 655.) She reported that the medication was not helping her. (R. at 655.) On November 7, 2010, Farley continued to report that Swiney's condition was deteriorating and that she was unable to work. (R. at 654.) He assessed Swiney's then-current GAF score at 50,[6] with her highest GAF score being 85[7] within the past year. (R. at 654.) Farley diagnosed panic disorder with agoraphobia. (R. at 654.)

On November 1, 2010, Farley completed a mental assessment indicating that Swiney had a seriously limited, but not precluded, ability to follow work rules, to relate to co-workers, to interact with supervisors, to function independently, to understand, remember and carry out simple job instructions, to maintain personal appearance, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 651-53.) He also opined that Swiney had no useful ability to deal with the public, to use judgment, to deal with work stresses, to maintain attention/concentration, to understand, remember and carry out complex and

---

[6] A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning...." DSM-IV at 32.

[7] A GAF score of 81-90 indicates that the individual has "[a]bsent or minimal symptoms …, good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns…." DSM-IV at 32.

-12-

detailed instructions and to demonstrate reliability, (R. at 651-52.) He opined that Swiney would miss more than two days of work a month. (R. at 653.)

On September 6, 2011, Farley completed another mental assessment finding that Swiney had a seriously limited, but not precluded, ability to follow work rules, to relate to co-workers, to interact with supervisors, to function independently, to understand, remember and carry out detailed and simple job instructions, to maintain personal appearance and to behave in an emotionally stable manner. (R. at 1037-39.) He also opined that Swiney had no useful ability to deal with the public, to use judgment, to deal with work stresses, to maintain attention/concentration, to understand, remember and carry out complex instructions, to relate predictably in social situations and to demonstrate reliability. (R. at 1037-38.) Farley opined that Swiney would miss more than two days of work a month. (R. at 1039.)

In March 2012, October 2012 and January 2013, Farley completed additional medical source statements with essentially the same findings as his prior findings. (R. at 1125-27, 1176-78, 1200-02.) On October 16, 2012, Swiney reported that her symptoms of anxiety had not improved and that she still experienced panic attacks. (R. at 1180.) Farley assessed Swiney's then-current GAF score at 45, with her highest score being 50 in the past year. (R. at 1180.) Farley noted that Swiney had a poor prognosis on her ability to return to work. (R. at 1180.)

-13-

The record shows that Dr. Sachdev Somiah, M.D., a psychiatrist, treated Swiney from October 2010 through June 2013 for panic disorder, with agoraphobia. (R. at 884-87, 909, 1082-84, 1114, 1173-74, 1199, 1227-30.) On November 22, 2010, Swiney reported that her panic attacks were under control. (R. at 884.) She had normal judgment and intact memory. (R. at 884.) On April 11, 2011, Swiney reported an increase in panic attacks. (R. at 909.) She had normal judgment and intact memory. (R. at 909.) On September 20, 2011, Swiney reported feeling a "bit better." (R. at 1083.) She noted no significant increase in panic attacks. (R. at 1083.) On December 13, 2011, Swiney reported that her panic attacks had worsened. (R. at 1082.) She had normal judgment and intact memory. (R. at 1082.) On March 7, 2012, Swiney complained of anxiety. (R. at 1114.) On May 30, 2012, Swiney reported a decrease in her anxiety symptoms. (R. at 1174.) On August 22, 2012, Swiney reported a decrease in her panic attacks. (R. at 1173.)

On November 19, 2012, Swiney continued to report anxiety and depression. (R. at 1199.) Dr. Somiah assessed Swiney's then-current GAF score at 65.[8] (R. at 1199.) On February 11, 2013, Swiney complained of depression. (R. at 1230.) She had a blunt and depressed affect, anxious mood, intact memory and normal judgment. (R. at 1230.) Dr. Somiah assessed her then-current GAF score at 70. (R. at 1230.) From March 2013 through June 2013, Dr. Somiah noted Swiney's mood was euthymic, with appropriate affect and intact thought processes, judgment and memory. (R. at 1227-29.) Dr. Somiah assessed her then-current GAF scores

_____

[8] A GAF score of 61-70 indicates "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well ...." DSM-IV at 32.

-14-

between 60 and 70. (R. at 1227-29.)

On November 4, 2010, John Powell, P.A.-C., a certified physician's assistant with Pain Medicine Associates, P.C., saw Swiney for complaints of low back pain following posterolateral instrumented fusion of the L5/S1. (R. at 662-63.) On lower extremity examination, Swiney was neurologically intact, with no evidence of sciatica or radiculopathy. (R. at 662.) Swiney walked with an unassisted, non-antalgic gait. (R. at 662.) Powell diagnosed chronic continued mechanical low back pain following 2007 fusion. (R. at 663.) Powell recommended bilateral sacroiliac joint injections. (R. at 663.) On April 19, 2011, it was noted that because Swiney had so many psychological issues that predominated, it was not possible to get a clear answer as to whether she benefited from the sacroiliac joint injection. (R. at 927.) Powell ordered a repeat EMG study on Swiney's lower extremities. (R. at 927.) He noted that if these findings were normal, he did not perceive any treatable neurological deficit. (R. at 927.) Swiney's EMG study was normal. (R. at 976.)

On March 3, 2011, Dr. Michael Hartman, M.D., a state agency physician, found that Swiney had the residual functional capacity to perform light work. (R. at 77-78.) He found that Swiney could occasionally climb ramps and stairs and stoop; frequently balance, kneel, crouch and crawl; and never climb ladders, ropes or scaffolds. (R. at 77-78.) Dr. Hartman found no manipulative, visual or communicative limitations. (R. at 78.) He found that Swiney should avoid concentrated exposure to extreme heat and cold, wetness, humidity and vibration

-15-

and avoid even moderate exposure to hazards, such as machinery and heights. (R. at 78.)

On March 7, 2011, Jo McClain, P.C., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding that Swiney suffered from an anxiety-related disorder. (R. at 75.) She opined that Swiney was moderately restricted in her activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 75.) McClain opined that Swiney had not experienced repeated episodes of decompensation of extended duration. (R. at 75.)

That same day McClain completed a mental assessment finding that Swiney was moderately limited in her ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or in proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, to respond appropriately to changes in a work setting and to travel in unfamiliar places or use public transportation. (R. at 79-80.) McClain found that Swiney was markedly limited in her ability to interact appropriately with the general public. (R. at 79.) She opined that, despite these limitations, Swiney could perform simple work in a nonstressful environment. (R.

-16-

at 80.)

On April 12, 2011, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Swiney at the request of her attorney. (R. at 911-22.) Swiney displayed a mixed affect. (R. at 916.) Lanthorn described her mood as generally an agitated depression. (R. at 916.) The Wechsler Adult Intelligence Scale - Fourth Edition, ("WAIS-IV"), was administered, and Swiney obtained a full-scale IQ score of 75. (R. at 917.) Lanthorn diagnosed major depressive disorder, single episode, moderate to severe; panic disorder without agoraphobia; chronic pain disorder associated with both psychological factors and general medical conditions; anxiety disorder with generalized anxiety; and borderline intellectual functioning. (R. at 921.) He assessed Swiney's then-current GAF score at 50. (R. at 921.) Lanthorn found Swiney's problems to be of "marked consequence" which limited her ability to function in a work role. (R. at 922.)

That same day, Lanthorn completed a mental assessment indicating that Swiney had a more than satisfactory ability to maintain personal appearance and a limited, but satisfactory, ability to understand, remember and carry out simple instructions and to maintain personal appearance. (R. at 924-26.) He indicated that Swiney had a seriously limited ability to follow work rules, to relate to co-workers, to use judgment, to interact with supervisors, to deal with work stresses, to function independently, to maintain attention and concentration, to understand, remember and carry out detailed instructions, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R.

-17-

at 924-25.) Lanthorn found that Swiney had no useful ability to deal with the public and to understand, remember and carry out complex instructions. (R. at 924-25.) He opined that Swiney would be absent from work more than two days monthly. (R. at 926.)

On June 16, 2011, Dr. Thomas Henretta, M.C., a state agency physician, found that Swiney had the residual functional capacity to perform light work. (R. at 94-96.) He found that Swiney could occasionally climb ramps and stairs, balance, stoop, kneel and crawl; frequently crouch; and never climb ladders, ropes or scaffolds. (R. at 95.) Dr. Henretta found no manipulative, visual or communicative limitations. (R. at 95.) He found that Swiney should avoid concentrated exposure to extreme heat and cold, wetness, humidity and vibration and avoid even moderate exposure to hazards, such as machinery and heights. (R. at 95-96.)

On June 24, 2011, Joseph Leizer, Ph.D., a state agency psychologist, completed a PRTF finding that Swiney suffered from an anxiety-related disorder. (R. at 92-93.) He opined that Swiney was mildly restricted in her activities of daily living and moderately limited in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 92.) Leizer opined that Swiney had not experienced repeated episodes of decompensation of extended duration. (R. at 92.)

That same day, Leizer completed a mental assessment finding that Swiney was moderately limited in her ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods,

-18-

to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to travel in unfamiliar places or use public transportation and to set realistic goals or make plans independently of others. (R. at 96-98.) He opined that, despite these limitations, Swiney could perform simple, unskilled and nonstressful work. (R. at 98.)

On November 4, 2011, Dr. Thomas G. Sutton, M.D., of the University of Virginia Pain Management Center, examined Swiney and diagnosed sacroiliac pain and peripheral neuropathy of undetermined origin. (R. at 1058-62.) Dr. Sutton noted that Swiney had normal range of motion. (R. at 1060.) She had normal strength in both the upper and lower extremities. (R. at 1060.) Dr. Sutton noted that Swiney had a normal mood and affect. (R. at 1060.) He offered sacroiliac joint injections, but Swiney opted to wait on any procedural intervention. (R. at 1061.)

The record shows that Dr. V. Kumar, M.D., treated Swiney from February 2013 through June 2013 for complaints of low back pain and anxiety. (R. at 1216-25.) During this time, Swiney reported that her anxiety, lumbar pain and fibromyalgia were controlled with medication. (R. 1216, 1218, 1221, 1224.)

-19-

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2014); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2014).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein.

-20-

*See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(c), if he sufficiently explains his rationale and if the record supports his findings.

Swiney argues that the ALJ erred by making incomplete findings at step three of the sequential evaluation process. (Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-6.) In particular, Swiney argues that the ALJ failed to provide support or an explanation of his finding that her alleged mental impairments did not meet or equal a listed impairment. (Plaintiff's Brief at 6.) Swiney further argues that the ALJ erred by improperly determining her residual functional capacity. (Plaintiff's Brief at 6-9.)

After a review of the evidence of record, I do not find that substantial evidence exists to support the ALJ's finding with regard to Swiney's residual mental functional capacity. The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining medical professionals, which constitute a major part of the proof of disability cases. *See McLain v. Schweiker*, 715 F.2d 866, 869 (4th Cir. 1983). The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.

-21-

20 C.F.R. § 404.1527(c)(2) (2014). However, "[c]ircuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)).  In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  *Craig*, 76 F.3d at 590.

 Swiney argues that the ALJ failed to sufficiently articulate his findings at step three of the sequential process. She specifically argues that the ALJ did not adequately explain the basis for his finding that she had only mild restrictions in activities of daily living and social functioning and moderate difficulties in maintaining concentration, persistence or pace. (Plaintiff's Brief at 6.) Swiney argues that the ALJ provided no support or explanation in support of these findings. (Plaintiff's Brief at 6.)  I agree.

The ALJ noted that he was giving little weight to the opinions of Lanthorn and Farley, stating that they were unsupported by the medical evidence as a whole. (R. at 26.) The ALJ also gave little weight to the opinion of Dr. Whitman because it was inconsistent with her own clinical findings, as well as the other clinical findings in the record. (R. at 26.)  The ALJ also noted that he was giving "some weight" to the mental assessments of the state agency psychologists "to the extent of the residual functional capacity assessment," finding that Swiney was able to maintain attention and concentration throughout an eight-hour workday for tasks involving only short, simple instructions. (R. at 17, 26.)

-22-

The medical evidence shows that, despite her improvement on medication, Swiney's mental health providers, as well as the state agency psychologists, imposed greater limitations on her work-related mental abilities. Each of Swiney's mental health providers, with the exception of Dr. Whiteman,[9] found that she had a seriously limited to no useful ability to interact with supervisors, to relate to co-workers, to deal with the public, to use judgment, to function independently, to follow work rules, to deal with work stresses, to maintain attention/concentration and to demonstrate reliability. (R. at 645-47, 651-52, 924-25, 1086-88, 1125-27, 1176-78, 1200-02.)

State agency psychologist McClain found that Swiney was moderately limited in her ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or in proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, to respond appropriately to changes in a work setting and to travel in unfamiliar places or use public transportation. (R. at 79-80.) McClain found that Swiney was markedly limited in her ability to interact appropriately with the general public. (R. at 79.) She opined that, despite these

---

[9] On October 15, 2001, Dr. Whitman opined that Swiney had a limited, but satisfactory, ability to follow work rules and to function independently, and on January 6, 2012, she opined that Swiney had a limited, but satisfactory, ability to follow work rules. (R. at 645, 1086.)

limitations, Swiney could perform simple work in a nonstressful environment. (R. at 79.)

Furthermore, state agency psychologist Leizer opined that Swiney was moderately limited in her ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to travel in unfamiliar places or use public transportation and to set realistic goals or make plans independently of others. (R. at 96-98.) He opined that, despite these limitations, Swiney could perform simple, unskilled and nonstressful work. (R. at 98.)

The state agency psychologists both opined that Swiney could perform simple, unskilled and nonstressful work. (R. at 79, 98.) Such finding is consistent with the findings of Lanthorn, who found that Swiney had a seriously limited ability to deal with work stresses. (R. at 924.) While the ALJ found that Swiney could perform sedentary work that involved performing only short, simple instructions to accommodate her inability to maintain attention and concentration throughout an eight-hour workday, he failed to address Swiney's inability to deal with work stresses. (R. at 17.) In fact, the only mental residual capacity limitation

-24-

that he presented to the vocational expert was her inability to perform tasks that involved more than short and simple instructions. (R. at 62-63.) While the vocational expert identified jobs that existed that Swiney could perform within this limitation, I do not find that substantial evidence exists to support the ALJ's finding that a significant number of jobs exist that Swiney could perform due to the ALJ's failure to include all of her mental residual capacity limitations. That being said, I remand this case to the Commissioner for further development concerning Swiney's mental residual functional capacity.

For all of the reasons stated herein, I find that substantial evidence does not supports the ALJ's weighing of the medical evidence. I further find that the evidence cited above does not provide substantial evidence supporting the ALJ's finding as to Swiney's mental residual functional capacity and his finding that Swiney was not disabled. An appropriate order and judgment will be entered.

ENTERED: July 13, 2015.

s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-25-